UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Julian Bennet, | : | Civil Action No. |
| PLAINTIFF. | : | |
| v. | : | _____ |
| ___ Washington, | : | |
| In His Individual Capacity; | : | |
| Thomas Kenny, | : | |
| In His Individual Capacity; | : | |
| ___ Snyder, | : | |
| In His Individual Capacity; | : | |
| ___ Lugo, | : | |
| In His Individual Capacity; | : | |
| George Hurdle, | : | |
| In His Individual Capacity; | : | |
| ___ Griffin, | : | |
| In Her Individual Capacity; | : | |
| ___ Kenney, | : | |
| In His Individual Capacity; | : | |
| ___ Ortiz, | : | |
| In His Individual Capacity; | : | |
| ___ Price, | : | |
| In His Individual Capacity; | : | |
| ___ Kwaak, | : | |
| In His Individual Capacity; | : | |
| ___ Stager, | : | |
| In His Individual Capacity; | : | |
| ___ Pelletieri, | : | |
| In His Individual Capacity; | : | |
| ___ Grant, | : | |
| In His Individual Capacity; | : | |
| ___ Cary, | : | |
| In His Individual Capacity; | : | |
| ___ McKellin, | : | |
| In Her Individual Capacity; | : | |
| Luara Oliveris, | : | |
| In Her Individual Capacity; | : | |
| Shawn Milner, | : | |
| In His Individual Capacity. | : | |
| DEFENDANT(S). | : | |

A JURY TRIAL IS HEREBY DEMANDED

<u>COMPLAINT</u>

## A. <u>INTRODUCTION</u>

1. The Plaintiff herein alleges under 42 U.S.C. §§ 1983, 1985, 1986, and 1988 that the behaviors and actions of the Defendants violated his First, Eigth and Fourteenth Amendment Rights under the United States Constitution ("U.S. Constitution"), and violations of State and Federal Laws, inclusive of 18 U.S.C. §§ 241 and 242.

## B. <u>PRELIMINARY STATEMENT</u>

2. The Plaintiff herein, Julian Bennet, inmate number 403772, was a State prisoner in the custody and control of the Commissioner of the Connecticut ("Conn." Department of Corrections ("DOC") and was held at the Garner Correctional Institution ("GCI") in Newtown, Conn.

3. The Plaintiff alleges the Defendants herein acted individually &/or in concert under Color of Law and Color of their Authority as DOC Officials to violate the Civil Rights of the Plaintiff and the Laws established to protect U.S. Citizens and prisoners.

4. The Plaintiff specifically alleges the Defendants acting &/or failing to act either individually &/or in concert did;
   a. fail to protect the plaintiff;
   b. did conspire to assault the plaintiff &/or facilitate him being assaulted;
   c. did assault and batter him with physical violence;
   d. did use excessive force upon him unnecessarily causing him physical injury;
   e. did act with deliberate indifference to him injuries and medical needs;
   f. subject him to cruel and unusual punishments;
   g. subject him to harassments, threats, brutalities and demeaning acts.
   h. fail to supervise subordinate staff;
   i. conspire to any or all of the above.

## C. <u>JURISDICTION AND VENUE</u>

5. The Court has Jurisdiction over the Plaintiff's claims of clear and egregious violations to his Federal Constitutional Rights under 28 U.S.C. §§ 1331, 1332, 1334(a)(3) and 1367(a).

6. The events giving rise to the Causes of Action described herein occured in the District of Conn., thus Venue is appropriate under 28 U.S.C. § 1391(b)(2).

7. The Court has supplmental Jurisdiction over Plaintiff's claims of

violations of State Laws under 28 U.S.C. § 1367.

8. The Plaintiff seeks Damages and Relief pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1988, Declaratory Relief pursuant to 28 U.S.C. §§ 2201 and 2202.

D. PARTIES

9. The Plaintiff herein, Julian A. Bennett, inmate number 403772, was at all times relevant to this Complaint a State prisoner in the custody and control of the Commissioner of the Conn. DOC and was housed at the GCI.

10. The First named Defendant, ___[1] Washington, was at all times relevant to this Complaint the Warden of the GCI. He is sued in his individual capacity.

11. The Second named Defendant, Thomas Kenny, was at all times relevant to this Complaint a Deputy Warden at GCI. He is sued in his individual capacity.

12. The Third named Defendant, ___ Snyder, was at all times relevant to this Complaint a Deputy Warden employeed at the GCI. He is sued in his individual capacity.

13. The Fourth named Defendant, ___ Lugo, was at all times relevant to this Complaint the Administrative Captain employeed at the GCI. He is sued in his individual capacity.

14. The Fifth named Defendant, George Hurdle, was at all times relevant to this Complaint a Captain with the title of Shift Commander employeed at the GCI. He is sued in his individual capacity.

15. The Sixth named Defendant, ___ Griffin, was at all times relevant to this Complaint a Correctional Officer employeed at the GCI. He is sued in his individual capacity.

16. The Seventh named Defendant, ___ Kenney, was at all times relevant to this Complaint a Correctional Officer employeed at the GCI. He is sued in his individual capacity.

17. The Eighth named Defendant, ___ Ortiz, was at all times relevant to this Complaint a Correctional Officier employeed at the GCI. He is sued in his individual capacity.

18. The Ninth named Defendant, ___ Price, was at all times relevant to this Complaint a Correctional Officer employeed at the GCI. He is sued in his individual capacity.

---

[1] the first names of several defendants is unknown, in such cases a ___ is used.

3

19. The Tenth named Defendant, ___ Kwaak, was at all times relevant to this Complaint a Correctional Officer employeed at the GCI. He is sued in his individual capacity.

20. The Eleventh named Defendant, ___ Stager, was at all times relevant to this Complaint a Correctional Officer employeed at the GCI. He is sued in ihs individual capacity.

21. The Twelfth named Defendant, ___ Pelletieri, was at all times relevant to this Complaint a Correctional Officer employeed at the GCI. He is sued in his individual capacity.

22. The Thirteenth named Defendant, ___ Grant, was at all times relevant to this Complaint a Correctional Lieutenant employeed at the GCI. He is sued in his individual capacity.

23. The Fourteenth named Defendant, ___ Cary, was at all times relevant to this Complaint a Correctional Lieutenat employeed at the GCI. He is sued in his individual capacity.

24. the Fifteenth named Defendant, ___ McKellin, was at all times relevant to this Complaint a Correctional Lieutenant employeed at the GCI. She is sued in her individual capacity.

25. The Sixteenth named Defendant, Luara Oliveris, was at all times relevant to this Complaint a Nurse Supervisor employeed at the GCI. She is sued in her individual capacity.

26. The Seventeenth named Defendant, Shawn Milner, was at all times relevant to this Complaint a State Prisoner and citizen of Conn. housed at the GCI in the custody and control of the Conn. DOC. He is sued in his individual/personal capacity.

27. All named Defendants, except Sean Milner, were employees of the State of Conn. DOC and acted under Color of Law and Color of their Authority as Officials of the Conn. DOC. Defendant Milner was a State citizen acting in his personal capacity who has no mental disabilities and is legally responsible for all his actions.

## E. CAPACITY OF DEFENDANTS

28. All named Defendants are sued in their individual/personal capacity only.

## F. PREVIOUS LAWSUITS

29. The Plaintiff has filed no other civil actions in either State or

Federal Court dealing with these facts or circumstances.

## F. PREVIOUSLY DISMISSED ACTIONS OR APPEALS

30. The Plaintiff has had no civil actions or appeals in either State or Federal Courts that were dismissed as frivolous, mallicous or for failure to state a claim upon which relief may be granted. This is Plaintiff's first civil action of any kind.

## G. EXHAUSTION OF ADMINISTRATIVE REMEDIES

31. Pursuant to the Prison Litigaton Reform Act, codified under 42 U.S.C. §1997e(a), the Plaintiff has exhausted all **available**[2] remedies by following Administrative Directive 9.6. Additionally, Conn. DOC's Administrative Directives do not involve some claims herein as they are not subject to the DOC process.

## I. STATEMENT OF FACTS

32. During the relevant times of this action the Plaintiff was housed in the Fox unit of Garner, which is a Restrictive Housing Unit ("RHU"), and houses the classifications of Administrative Segregation ("A/S"), Chronic Discipline, Administrative Detention/Punitive Segregation.

33. The Plaintiff was classified as A/S Phase 3.

34. A/S is an Restricitve Status, purusuant to Administrative Directive's ("AD") 9.2 "Offender Classification"[3] §12 and 9.4 "Restrictive Status"[4] wherein inmates who have been classified as A/S have been deemed to pose a threat to others and are mandated to be seperated and segregated to secure safety and security. A/S is a multi phase status wherein inmates progress after a specified period of time being discipline free, progression through the A/S phases are at the Wardens discretion. A/S consists of 3 phases, the first and most restrictive being phase 1 which is approx. 120 days, after completeion of phase 1, which is typically housed at the Walker C.I., an inmate is progressed to phase 2 at Garner in Fox unit. Fox unit holds A/S phases 2-3, which are considered different statuses and have different management provisions, phase 2 is still a restrictive status where an inmate still poses a threat, phase 3 is a less restrictive status used to prepare an inmate for return to general population ("gen.pop."). Phase 3 is essentially a transitional housing status. Inmates in phase 2 and 3 are always supposed to be kept seperated and segregated from eachother.

---

[2] see Ross v. Blake, 136 S.Ct. 1850, 1858-1859(2016); see also Baltas v. Rivera, 2019 WL 3944435, 10-11 (D.Conn. Oct. 22, 2019)(quoting Hayes v Dahlke, 2020 WL 5883945(2nd Cir. Oct. 5, 2020))

[3-4] AD 9.2 & 9.4 are incorporated into this complaint by reference.

35. In addition to progression, inmates in the A/S program can also be "regressed". Regressions occure when an inmate recieves disciplinary infractions, is involved in an incident or for various other criteria at the Wardens discretion. Regression can mean being regressed to the beginning of the A/S inmates current phase, a previous phase or all the way from phase 3 to phase 1. In the event of an assaultive incident an inmates regression is mandated.

36. There are daily memos, post orders and instructions issued to all Fox unit staff mandating the operations of the unit and staff duties, which include a mandate that no inmate on one status is allowed to be in contact with an inmate on a different status. For example, inmates on A/S phase 2 and A/S phase 3 must be kapt physically seperated at all times.

37. Additionally, there are daily memos, post orders and instructions that inmates with known conflicts are to be kept seperated from eachother at all times.

38. DOC staff become aware of inmate conflict through various ways, which include documented histories of conflicts, information, inmates files, unit files and information and reportings, as well as staff personal observations.

39. Pursuant to AD 9.4 all DOC personnel posted in a RHU are mandated to undergo special training prior to such post assignments to ensure all staff have the training, knowledge and expertise to operate a RHU and deal with the unique inmate population of an RHU, this requirement is even more necessary when dealing with Level 5 A/S inmates.

40. Garner Warden ___ Washington ("Washington") is personally responsible for all aspects of the A/S inmate population and the operations of the A/S unit and program, which operates entirely at his discretion. He personally reviews the files os each A/S inmate and is aware of all the fact and circumastances relating to their incarceration, he also personally conducts mandated reviews of each A/S inmates status and decides whether to progress them or regress them. Also he tours the A/S RHU a mandated minimum of twice weekly and is personally aware of the operations and activities of the unit and its inmate population from perosnal observations and from daily reporting he recieves from unit personnel.

41. Deputy Wardens Thomas Kenny ("Kenny") and ___ Snyder ("Snyder"), are

6

for overseeing aspects of the A/S program, unit and its inmate population and staff duties as deligated to them by Washington, they are personally aware of the operations of the unit and any incident or conflict that arises, they also conduct tours a mandated minimum of twice a week of the  A/S unit and are personally aware of any conflicts or incidents by personal observation and daily reporting.

42. Captain George Hurdle ("Hurdle") is the First Shift Commander, and Captain ___ Lugo ("Lugo") is the Administrative Captain, both are responsible for the management and supervision of all Garner staff and the operations of the facility, including Fox unit. Both are personally aware of all operations and incidents and conflicts in the fox unit by daily reporting.

43. Additionally all administrators to include Washington, Kenny, Snyder, Lugo and Hurdle conduct daily morning meetings and briefings, wherein they are made personally aware of all incidnets, operations, conflicts, and issues regarding the inmate population to include fox unit which, as a Level 5 A/S unit takes priority over all others.

44. On or about Nov. 24, 2021 inmate Shawn Milner, inmate number 341381, was progressed from A/S phase 1 at Walker C.I. to A/S Phase 2 at Garner C.I.

45. Plaintiff and Milner have a documented history of conflicts. Upon Milner's arrival at Garner unit staff were briefed by Unit Manager Capt. Andrew Tolmie, that their was a conflict between these two inmates and that they were to be kept seperate from eachother at all times. Additionally Washington, Kenny, Snyder, Hurdle and Lugo were also aware of the outstanding conflict between parties by review and report of their recirds and information available to them.

46. c/o ___ Griffin ("Griffin") is a regularly posted officer in the A/S fox unit, he is personally aware of all operations and has been briefed on all inmate conflicts and speration issues. It is his duty to insure inmate safety and security and to keep inmates with seperation conflicts apart and to intervene and/or report and incident.

47. On or about the first week of December 2021, co/ Griffin did improperly place Milner in a neighboring outside recreation cage, the common policy and procedure is to seperate inmates with conflicts by at least one cage between them so they cannot directly interact with on another.

48. At said time Milner did assault the Plaintiff with urine by removing

a large bottole from his uniform/clothing and proceeding to hold it through the caging of the rec cages and spray Plaintiff with a large quantity of urine assaulting him with bodily fluids.

49. c/o Griffin stood by and watched this incident and allowed it to occure, while he laughed at Plaintiff's victimization. Griffin made no move to interven and made no attempt to stop Milner or report his misconduct, essentially green lighting Milner to continue his assaultive behaviors.

50. Griffin then stood by and watched Milner threaten and verbally harass Plaintiff for the remainder of the rec period of approx. two hours. The Plaintiff requested to return inside to cease Milners verbal assault and to take a shower and wash Milner's bodily waste from his body, but Griffin refused and forced Plaintiff to continue to endure Milners abuse.

51. c/o's Kenney, Ortiz, Proce, Kwaak, Stager, Pelletiere are all regularly posted officers in the fox unit on second shift, they are personally aware through memoe's, briefings and reporting of the incidents in the unit and all inmate conflicts.

52. Following the assault with urine Milner proceeded to verbally threaten the Plaintiff with physycal violence, further assaults with bodily waste, and harass the Plaintiff by yelling out of his cell door on a daily basis, meaning every single day morning, noon and night for hours at a time. All staff were personally aware of Milners threats towars Plaintiff as they personally observed them on a daily basis.

53. Washington, Kenny, Snyder and Hurdle were personally aware of Milner's threats against Plaintiff as they personally observed them on their weekly tours and personally overheard them.

54. Additionally Capt. Tolmie was aware of the threats and did take steps to secure Plaintiff's safety by posting expressed memo's to all unit staff to keep Milner and Plaintiff seperated in all manners, Tomie also expressly reported the conflicts to Wasington, Kenny, Snyder, Hurdle, and Lugo.

55. On or about Nov. 28, 2021 Milner did also engage in significantly disruptive conduct which included the need for a cell extraction and wherein he assaulted a corrections officer by striking him in the head.

56. This kind of conduct mandates a regrssion back to phase 1 at Walker.

However, Washington refused to regress Milner back to phase 1, despite his knowledge that Milner continued to pose a threat of imminent risk and continued to be assaultive, thereby creating an unnecessary unsafe enviorment.

57. Upon Plaintiff's knowledge, information and belief Washington allowed Milner to engage in said assaultive behavior without regressing him back to phase 1 because Milner acts as a confidential informat for the DOC and Garner C.I. intelligence staff.

58. One of the A/S corrections staffs most critical and significant duties is to ensure all doors within the unit are secured. All doors secure automatically, staff are required to ensure each door is secure by manually checking the doors routinely and upon each use.

59. This includes the unit shower doors, which also secure automatically, the only way for the shower doors to not be secured is for a c/o to manually insert the key and unlock the door.

60. On or about Dec. 26 Milner and c/o's Kenney, Ortiz, Price, Kwaak, Stager, Pelletiere did enter into a conspiratorial agreement to unsecure Milner while in the shower and allow him to physically assualt Plaintiff. This agreement was, in part, motivated by unit c/o's desire to see the Plaintiff harmed for past miscondcuts he's engaged in that caused these staff an increased work load, including recent incidents in Dec. where Plaintiff had a mental health episode and acted out for several days.

61. The aforementioned c/o's did incorporate Lt.s Grant, Cary and McKellin into their conspiratorial conduct with Milner, specifically the c/o's explained their intents to allow Milner to assault Plaintiff that evening and sought the Lt.s to ensure Milner not be subjected to disciplinary action for his assault, to which the Lt.s agreed.

62. That evening Plaintiff attended gym rec out of the unit, during which the aforementioned c/o's removed Milner from his cell F108, and placed him in the unit bottom tier shower, then after shutting the door which locks automatically they then inserted the key and manually unlocked the door leaving it unsecured.

63. Pursuant to AD 9.4 and Garner policy and procedure inmates are to be alloted a maximum of 15 minutes to shower, however these c/o's left Milner in the shower for over an hour to allow him to complete the preplanned assault.

64. Based on Plaintiff's knowledge, information and belief after they

9

unsecured the shower the aforementioned c/o's then actively discussed the impending attack on Plaintiff and discussed how they were going use the opprotunity to use excessive force upon Plaintiff and "drill his head into the ground".

65. Approx. one hour after leaving the unit the Plaintiff returned to the unit and entered the shower. After taking his fifteen minute shower he exited the shower.

66. At that point Milner opened the unsecured shower door and proceeded to violently assault and attack the Plaintiff coming from behind him and repeatedly striking him in the back of the head and the face with closed fists causing the Plaintiff pain and injury.

67. As Plaintiff was being assaulted the present c/o's Kenney, Ortiz, Price, Kwaak, Stager and Pelletiere waited and did not intervene until the assault had began, they had ample time to intercept Milner prior to the assault but did not and intentionally and willfully allowed Milner to assault Plaintiff with physical violence.

68. After Plaintiff was struck several times the aforementioned c/o's then swarmed the Plaintiff Ortiz and Kenney did pull Milner away from the Plaintiff and hold him while Price, Kwaak, Stager and Pelleteire did tackle the victim Plaintiff causing his head to violently strike the concrete wall then floor causing him extreme pain and a brief loss of consciousness. c/o's Pelletiere, Kwaak and Stager did strike the Plaintiff several times in the body and did force his face down into the ground mashing his face againt the tile floor.

69. Supsequently Lt.s Grant, Cary and McKellin responded and placed Milner in a punitive seg. cell and the Plaintiff in a punitive seg. cell, wherein they forced Plaintif to undergo a strip search of his body.

70. Lt.s Grant, Cary and McKellin then intentionally and willfully "failed" to sign the assault disciplinary report issued to Milner for his attack upon Plaintiff, causing the DR to be dismissed as a process failure and Milner recieved no disciplinary action for his attack, and was returned to his cell the following day or next.

71. The signing of a DR is a common  and daily official duty for all Lt.s and the failure to sign a DR can only be done as a purposeful and intentional act, as DR's can not even be processed or delivered without the required supervisory signature.

72. After this assault upon the Plaintiff Washington, Kenny, Snyder,

Hurdle and Lugo were all made aware of Milner's physcial assault on the Plaintiff through briefings and official notices, again they refused to regress Milner or take any action to ensure that he could no longer assault the Plaintiff or other inmates, or staff.

73. Additionally Milner recieved various other class A disciplinary oiffenses while housed at Garner that should have mandated his regrssions back to phase 1 which went un acted upon.

74. Washington, Kenny, Snyder, Lugo, Hurdle and floor c/o's continued to take no action to secure Plaintiff's safety from Milner and allowed them to be housed together in the same unit only 4 cells apart from eachother.

75. On a near daily basis following the assault c/o's Griffin, Kenney, Ortiz, and Pelletiere allowed Milner to exit his cell and come to Plaintiff's cell and verbally harass and threaten him and spray urine and fecal matter at him through the cell door, this occured on first and second shift at least four times a week.

76. Plaintiff wrote muiltipl requests to Washington, Kenny, Snyder, Lugo and Hurdle requesting they act to stop Milner from his assaultive conducts and house him somewhere else, they took no aciton.

77. On numerous occasions Plaintiff requestd of Lt.s Grant and Cary to stop allowing their officers to allow Milner to walk around the unit and assault Plaintiff and others with bodily fluids, they took no action.

78. On or about Dec. 29, 2021 c/o Griffin again placed Milner in an adjacent rec cage to Plaintiff and allowed him to assault Plaintiff with bodily waste.

79. On Dec. 27, 2021 Nurse supervisor Luara Oliveris ("Oliveris") was assigned to the fox RHU wherein Plaintiff reported his injuries from the assault and the excessive force to her, which included pain in kneck, back and face, severe headaches, nausea, diziness, faintness and blurred vision. He requested medical evaluation and aid, Oliveris refused and stated it was all normal.

80. Plaintiff repeatedly requested medical aid for his injuries and pain from Washington and Snyder upon their unit tours and notified them Oliveris refused to treat him, they also failed to act to secure any medical treatment for Plaintiff.

81. As a result of the assault the Plaintiff continues to suffer splitting

11

headaches, blurred vision, bouts with nausea, dizziness and faintness from an untreated concussion,[5] and he suffers the psychological traumas he has endured as a result of these attacks with physical violences and bodily wastes and the constant verbal threats, harassments, taunts, and conduct which have forced him to live in a constant state of fear and pressions.

82. On or about Jan. 13, 2022 Plaintiff was released from the A/S program and moved to the H pod gen.pop. unit. He endured the physical assault and approx. 25 assaults upon him with bodily wastes by Milner while the named staff Defendants persistently stood by and allowed.

83. Additionally Milner has been allowed to continue assaulting inmates with bodily waste on a near daily basis which the named Defendants continue to allow.[6]

84. Plaintiff is a Pro Se inmate litigant entitled to liberal construction and liberal interpretation of his Complaint and Filings.

## J.  CAUSES OF ACTION

### FIRST CAUSE

1. Paragraphs 1-84 are hereby restated and made 1-84 of this Cause.

85. Defendants Washington, Kenny, Snyder, Lugo and Hurdle through their actions and/or failures to act individually and/or in concert did create an unnecessarily unsafe enviorment and did fail to take any reasonable action to ensure inmate safety and protect Plaintiff from harms and injuries[7] and civil rights violations in violation of his Eighth and Fourteenth amendment Rights under the U.S. Constitution and 42 U.S.C. §§ 1981, 1983, 1985, 1986, 1988 and 18 U.S.C. §§ 241, 242, 371 and 1519.

86. Plaintiff seeks damages against the Defendants in their inividual capacities and Declaratory Relief.

### SECOND CAUSE

1. Paragraphs 1-86 of the First Cause are hereby made 1-86 of this Cause.

---

[5] Science has proven concussions to be severe and permanent, such as Chronic Traumatic Encephalopathy ("CTE").

[6] 1/9/22 documented incident of Milner assaulting I/M Tate with Bodily fluids; 1/17/22 documented incident of Milner assaulting I?M McLaurin with bodily waste; 1/18/22 documented incident of Milner attempting to assault I?M? Baltas with bodily waste.

[7] see Farmer v. Brennan, 511 US 825, 834(1994)("Being violently attacked in prison is simply not part of the penalty criminal offenders pay for their offenses").

87. Defendant Milner[8] through his actions individually and/or in concert with others did violently assault and batter the Plaintiff and did repeatedly assault the Plaintiff with bodily waste causing the Plaintiff physical injuries and psychological harms in violation of Eighth and Fourteenth Amendment Rights under the U.S Constitution and 42 U.S.C. §§ 1983, 1981, 1985, 1986 and 1988.

88. Plaintiff seeks Damages against the Plaintiff and Declaratory Relief.

THIRD CAUSE

1. Paragraphs 1-87 of the Second Cause are hereby made 1-87 of this Cause.

88. Defendants Kenney, Ortiz, Price, Kwaak, Stager, Pelletiere, Griffin, Grant, Casey and McKellin through their actions and/or failures to act did conspire to allow and facilitate assaults upon the Plaintiff in violation of his Eighth and Fourteenth Amendment Rights under the U.S. Constitution and 42 U.S.C. §§ 1981, 1983, 1985, 1986, 1988 and 18 U.S.C. §§ 241, 242, 371 and 1519.

89. Plaintiff seeks damages against the Defendants in their individual capacities and Declaratory Relief.

FOURTH CAUSE

1. Paragraphs 1-89 of the Third Cause are hereby made 1-89 of this Cause.

90. Defendants Kenney, Ortiz, Price, Kwaak, Stager, Pelletiere through their actions and/or failures to act individually and/or in concert did subject the Plaintiff to excessive use of forces causing the Plaintiff to suffer substantial injuries, in violation of his Eighth and Fourteenth Amendment Rights under the U.S. Constitution, the Conn. Police Accountability Act, and 42 U.S.C. §§ 1981, 1983, 1985, 1986, 1988 and 18 U.S.C. §§ 241, 242, 371 and 1519.

91. Plaintiff seeks damages against the Defendants in their individual capacities and Declaratory Relief.

---

[8] Defendant Milner can be held liable and maintained under §1983 because he was a willfull participant in joint actions with DOC personnel and his conduct was engaged in in concert and/or with the consent of DOC personnel. see Dennis v. Sparksab, 449 US 24, 27(1980). Additionally Milner, as a ward of the State was not a private citizen for the purposes of Tort action.

13

## FIFTH CAUSE

1. Paragraphs 1-91 of the Fourth Cause are hereby made 1-91 of this Cause.

92. Defendant Oliveris through her actions and/or failures to act was deliberately indifferent to Plaintiff's injuries, pain and suffering and medical needs and did willfully deny Plaintiff treatment and care in violation of his Eighth and Fourteenth Amendment Rights under the U.S. Constitution and 42 U.S.C. §§ 1981, 1983, 1985, 1986, 1988 and 18 U.S.C. §§ 241, 242, 371 and 1519.

93. Plaintiff seeks damages against the Defendant in her individual capacity and Declaratory Relief.

## SIXTH CAUSE

1. Paragraphs 1-93 of the Fifth Cause are hereby made 1-93 of this Cause.

94. All named Defendants through their actions and/or failures to act individually and/or in concert were deliberately indifferent to the Plaintiff's wellbeing and health and safety in violation of his Eigth and Fourteenth Amendment Rights under the U.S. Constitution and 42 U.S.C. §§ 1981, 1983, 1985, 1986, 1988 and 18 U.S.C. §§ 241, 242, 371 and 1519.

95. Plaintiff seeks damages against the Defendants in their individual capacities and Declaratory Relief.

## SEVENTH CAUSE

1. Paragraphs 1- 95 of the Sixth Cause are hereby made 1-95 of this Cause.

96. All named Defendants through their actions and/or failures to act individually and/or in concert did subject the Plaintiff to undue threats, harassments, demeaning acts, assaults, opressions and tortures in violation of his Eighth and Furteenth Amendment Rights under the U.S. Consitution and 42 U.S.C. §§ 1981, 1983, 1985, 1986, 1988 and 18 U.S.C. §§ 241, 242, 371 and 1519.

97. Plaintiff seeks damamges against the Defendants in their individual capacities and Declaratory Relief.

## EIGHTH CAUSE

1. Paragraphs 1-97 of the Seventh Cause are hereby made 1-97 of this Cause.

14

98. Defendants Washington, Kenny, Snyder, Lugo, Hurdle, Grant, Casey and McKellin through their actions and/or failures to act individually and/or in concert did fail to supervise their subordinate staff and/or failed to train staff resulting in Civil Rights violations and harms and injuries to Plaintiff in violation of his Constitutional Rights under the U.S. Constitution and the Laws of the State and U.S.

99. Plaintiff seeks damages against the Defendants in their individual capacities and Declaratory Relief.

NINTH CAUSE

1. Paragrtaphs 1-99 of the Eighth Cause are hereby made 1-99 of this Cause.

100. Plaintiff is a Pro Se inmate litigant with no knowledge of the law or litigative processes or experiance with law or litigation, he is entitled to liberal construciton and liberal interpretation of his Complaint and filings.

101. Plaintiff hereby claims any and all Claims and Causes of Action that the Court may become aware of through liberal interpratation that the Plaintiff did not artfully articulate herein.

102. Plaintiff hereby claims any Relief or Awards available under the Law .

15

## K. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Seeks Declaratory Relief;

WHEREFORE, Plaintiff Seeks Compensatory Damages Against the Defendants in their Individual Capacities;

WHEREFORE, Plaintiff Seeks Punitive Damages Against the Defendants;

WHEREFORE, Plaintiff Seeks the Cost's of suit;

WHEREFORE, Plaintiff Seeks Reasonable Attorneys Fees;

WHEREFORE, Plaintiff Seeks All Other Relief Available Under the Law;

WHEREFORE, Plaintiff Seeks Any and All Relief Deemed Just and Equitable.


A JURY TRIAL IS HEREBY DEMANDED


Respectfully Submitted,
The Plaintiff,

08-12-22

Date

/s/ Julian A Bennett

Julian Bennett, Pro Se
Garner C.I.
50 Nunnawauk Rd.
Newtown, CT 06471

CT I/M No.  403772

16

## L. VERIFICATION

I, Julian Bennett, have read the foregoing Complaint and hereby Verify that the matters alleged therein are True and Factual to the very Best of my knowledge and belief. I Declare under Penalty of Perjury that all of the Foregoing is True and Correct.

Executed at Newtown, Connecticut in the County of Fairfield on this ___16^TH___ day of ___August___, 2022.

By the Plaintiff,

/s/ _Julian Q Bennett_

Julian Bennet, Pro Se
Garner C.I.
50 Nunnawauk Rd.
Newtown, CT 06471

Signed before me this day 16th August

State of Connecticut County of Fairfield

17